IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONALD W. KLEIN, PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:25-CV-1991-S-BK |
| | § | |
| VELANOS PRINCIPAL CAPITAL, INC., ET AL., DEFENDANTS. | § | |

# FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case was referred to the undersigned United States Magistrate Judge for pretrial management. Doc. 1. Before the Court is *Defendants Daniel Fernandes Rojo Filho and Nordic Trust Alliance KB's Motion to Dismiss Plaintiff's First Amended Complaint*, Doc. 24. For the reasons detailed here, the motion should be **GRANTED.**

## I. BACKGROUND

In July 2025, Plaintiff Donald Klein, proceeding *pro se*, initiated this action against Defendants Velanos Principal Capital Inc. ("Velanos"), Nordic Trust Alliance KB, LLC ("Nordic"), Daniel Fernandez Rojo Filho ("Fernandez"), Joshua Wearmouth ("Wearmouth"), and Lynda K. Byrd, individually and as successor to the Estate of James William Byrd, seeking to recover losses allegedly sustained through Defendants' operation of a fraudulent investment scheme. Doc. 3.

In October 2026, Defendants Nordic and Fernandez filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 21. In response, Plaintiff filed a six-page First Amended Complaint (the "Operative Complaint"). Doc. 23.

Plaintiff alleges that "Defendants were associated in fact as an enterprise with a common purpose: to obtain funds from Plaintiff through fraud, false pretense, and wire misuse." Doc. 23 at 3. According to the live pleading, this scheme began when, in April 2023, "Plaintiff wired $1,000,000 to Velanos for a purported 'risk-free' investment opportunity based on sham collateral." Doc. 23 at 2. As best as the Court can discern, this transaction was made pursuant to a Joint Venture Agreement ("JV Agreement") under which the investor was to provide cash or assets to Velanos as part of a standby letter of credit investment program. Doc. 23 at 2; Doc. 4 at 14-21 [JV Agmt].[1]

Plaintiff further alleges that "[o]n or about August 11, 2023, Plaintiff executed a $2,000,000 loan with Defendants[.]" Doc. 23 at 2; Doc. 23-1 at 6-7 [Loan Agmt]. Plaintiff contends, however, that "Defendants made false or misleading statements about risk, collateral, and repayment" which he relied upon to his detriment. Doc. 23 at 4. According to Plaintiff, "Defendants subsequently diverted at least $1,000,000 through [Nordic] accounts" and "never repaid" the loan. Doc. 23 at 2. Plaintiff additionally asserts that that, beginning in October 2023, Defendants initiated "[m]onthly unauthorized $25 ACH debits . . . from Plaintiff's account," which continued through the filing of this action. Doc. 23 at 2. Finally, Plaintiff alleges that in

[1] Although Plaintiff inexplicably excluded the JV Agreement from the Operative Complaint's exhibit list, the document is referenced throughout the Amended Complaint and in his remaining exhibits. *See* Doc. 23 at 2; Doc. 23-1 at 20-21. The Court thus considers the Agreement, which Defendants attach to their Reply. Doc. 40-1 at 2-9. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) ("When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents.").

November 2023, he "entered a partial settlement agreement with Wearmouth and Velanos, reserving claims against all other parties." Doc. 23 at 2. Although Plaintiff does not provide further detail, he attaches the purported settlement agreement to his amended Complaint. *See* Doc. 23-1 at 20-25.

Plaintiff ultimately asserts five causes of action against all Defendants, including civil RICO claims under 18 U.S.C. §§ 1962(c)-(d), fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), and claims for common law fraud, conspiracy, and unjust enrichment. Doc. 24 at 3-4.

As the only Defendants to have responded to the Operative Complaint, Velanos and Fernandez again move to dismiss.[2] *See* Doc. 24. As in their first motion to dismiss, Velanos and Fernandez (collectively referred to here as "Defendants") contend that the Operative Complaint is a "shotgun pleading[]" that fails to meet Federal Rule of Civil Procedure 12(b)(6)'s minimal pleading requirements. Doc. 24 at 2. In addition, Defendants now also seek dismissal under Rule 12(b)(1), asserting for the first time that Plaintiff lacks standing to pursue his claims. Doc. 24 at 2.

## II. Applicable Law

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when

[2] Although Defendant Lynda Byrd answered Plaintiff's original complaint on behalf of herself and as successor to the estate of Jame Byrd, Doc. 14, she did not file an amended answer or otherwise respond to the Operative Complaint. Defendants Velanos and Wearmouth, by contrast, have never appeared in this action and do not appear to have been properly served. *See* Doc. 13 at 1 (reflecting that the summons for Velanos Principal Capital Inc. was returned unexecuted).

the court lacks the statutory or constitutional power to adjudicate [it]." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party asserting jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Raj v. La. State Univ.*, 714 F.3d 322, 327 (5th Cir. 2013). In ruling on a 12(b)(1) motion, the court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citation omitted).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the "jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Moreover, where both Rule 12(b)(1) and 12(b)(6) grounds for dismissal have merit, the court should dismiss only on the jurisdictional ground. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). This prevents a court without jurisdiction from reaching the merits and prematurely dismissing a case with prejudice. *Id.*

## III. Analysis

Defendants argue that the Operative Complaint should be dismissed in its entirety under Rule 12(b)(1) because, contrary to his assertions, Plaintiff was not a party to the agreements or transactions underlying his claims. Doc. 24 at 2; Doc. 40 at 9. Specifically, Defendants contend that, although the operative pleading alleges that "Plaintiff" entered into the agreements, his own evidence demonstrates that the agreements were actually executed by a corporation or LLC, not by Plaintiff personally. Doc. 40 at 9. According to Defendants, because any rights and

obligations arising from the agreements belong only to the contracting entities, Plaintiff lacks standing to assert claims arising from them. Doc. 24 at 2.

Although Defendants neglect to distinguish between the two, the Court notes that "[s]tanding jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Servicios Azucarerors de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 801 (5th Cir. 2012) (internal quotations omitted). The Constitutional limitation "goes to the court's jurisdictional *power* to hear the case, while the prudential limitation goes to the court's administrative *discretion* to hear the case." *Lewis v. Knutson*, 699 F.2d 230, 236 (5th Cir. 1983). Because the former is a prerequisite to the court's subject matter jurisdiction, "[t]he question of Article III standing must be decided prior to [] prudential standing." *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 (5th Cir. 2002); *see also Warth v. Seldin*, 422 U.S. 490, 501-502 (1975) ("[T]he threshold question in every federal case" is "whether the plaintiff has made out a 'case or controversy' . . . within the meaning of Art. III.").

To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). At the pleading stage, the party invoking jurisdiction must "clearly . . . allege facts demonstrating" each element. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (citation omitted). "Failure to establish any one [element] deprives the

federal courts of jurisdiction to hear the suit." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (citation omitted).

"Prudential standing requirements exist in addition to the immutable requirements of Article III as an integral part of judicial self-government." *Superior MRI Servs. Inc. v. Alliance Healthcare Servs. Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (quotation omitted). One requirement of prudential standing is "that a plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights and interests of third parties." *Id.* This requirement is embodied in Federal Rule of Civil Procedure 17(a), which mandates that "an action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a)(1); *See also Pyramid Transp., Inc. v. Greatwide Dallas Mavis, LLC*, No. 3:12-cv-0149, 2013 WL 3834626, at *2 (N.D. Tex. July 25, 2013) (Fitzwater, C.J.) (Rule 17(a) "is in essence a codification of the prudential standing requirement that a litigant cannot sue in federal court to enforce the rights of third parties."). Unlike Constitutional standing, which requires dismissal, Rule 17(a) provides that courts "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." FED. R. CIV. P. 17(a)(3).

Here, Defendants' motion appears to conflate Article III standing and prudential standing. Although Defendants' purport to move under Rule 12(b)(1) for lack of "subject matter jurisdiction," their central argument is that Plaintiff cannot assert claims for injuries arising from agreements executed by his companies, DW Klein & Co., LLC and DW Klein & Co. Corporation. Doc. 24 at 2. In support, Defendants rely on *Wingate v. Hajdik*, in which the Texas Supreme Court held that "[a] shareholder or LLC member has no standing to assert claims for

injuries suffered by the company." Doc. 24 at 2; Doc. 40 at 3 (citing 795 S.W.2d 717, 719 (Tex. 1990)).

But while *Wingate* recites a limitation on shareholder standing, it does not hold that the limitation is jurisdictional. *See Ensley v. Cody Res., Inc.*, 171 F.3d 315, 320 n.7 (5th Cir. 1999) (noting that cases relied upon by the defendant, including *Wingate*, "do not suggest that the limitation on shareholder suits is based on a lack of [Article III] injury."). On the contrary, federal courts, including the Court of Appeals for the Fifth Circuit, have expressly recognized that this so-called shareholder standing rule "is a limitation on prudential standing—not Article III standing[.]"[3] *RLB Contracting. Inc. v. Genesis Energy, L.P.*, No. 18-3844, 2020 WL 5880918, at *2 n.2 (S.D. Tex. Oct. 2, 2020) (Miller, J.), *rev'd on other grounds,* 854 F. App'x 614 (5th Cir. 2021); *see also Ensley,* 171 F.3d at 319-20 (explaining that the "incantation that a shareholder may not sue for the corporation's injury does not attack [the] injury in fact" requirement of Article III standing); *Schoen v. Underwood*, No. 11-CA-16, 2012 WL 13029591, at *4 (W.D. Tex. May 15, 2012) (Smith, J.) (distinguishing between Article III and prudential

[3] "[W]hile a number of Fifth Circuit decisions appear, at first glance, to hold otherwise, a closer examination shows that none explicitly find standing lacking under Article III, and each decision at least references prudential or substantive law standing grounds as support for its conclusion." *BCC Merchant Solutions, Inc. v. Jet Pay, LLC*, 129 F.Supp.3d 440, 449 (N.D. Tex. Sept. 8, 2015) (Boyle, J.) (citing *Gregory v. Mitchell,* 634 F.2d 199, 202 (5th Cir.1981) (relying on Rule 17 and the governing substantive statute in finding no "standing" for plaintiffs to file "suit as shareholders of First Bank of Macon"); *United States v. Acadiana Treatment Sys. Inc.,* 214 F.3d 1350, 2000 WL 634145, at *3–4 (5th Cir.2000) (finding no "standing" without clarifying whether decision is based on Article III or "the equitable restriction against shareholder suits to redress injuries to a corporation"); *Stevens v. Lowder,* 643 F.2d 1078, 1080 (5th Cir.1981) (holding that "[a]n action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation," without clarifying whether Article III standing is implicated); *Schaffer v. Universal Rundle Corp.,* 397 F.2d 893, 896 (5th Cir.1968) (finding no "standing" based on "[t]he general rule," under Texas state law, "that an action to redress injuries to a corporation, whether arising out of contract or tort, cannot be maintained by a stockholder in his own name but must be brought in the name of the corporation")).

standing and treating *Wingate's* shareholder-standing rule as a prudential limitation). Thus, although here, Defendants characterize their challenge as jurisdictional, their argument is more appropriately understood as a real-party-in interest objection. This distinction is critical because "[u]nlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

Nevertheless, the Court must first determine whether Plaintiff has established Article III standing before reaching Defendants prudential standing objection. *Ford*, 301 F.3d at 333.

The Supreme Court addressed the Article III standing of shareholders in *Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd.,* 493 U.S. 331, 335-36 (1990). There, parent companies challenged California's method of taxing two corporations in which they owned shares. *Id.* at 334. Although only the subsidiaries were directly subject to the tax, the Supreme Court held that the shareholders nevertheless had Article III standing because the challenged tax threatened to cause them "actual financial injury . . . by illegally reducing the return on their investments . . . and by lowering the value of their stockholdings." *Id.* at 336. As the Court explained, the threat of such injury "is all that is required for Article III standing." *Id.*

Following *Alcan*, the majority of federal circuit courts have recognized that "shareholders suffer injury in the Article III sense when the corporation incurs significant harm," resulting in an actual—albeit indirect—injury to the shareholder. *Grubbs v. Bailes*, 445 F.3d 1275, 1280 (10th Cir. 2006); *see Ensley*, 171 F.3d at 320 (holding shareholders suffered a concrete injury sufficient to meet the constitutional justiciability requirement when they faced "a significant diminution in the value of their shares"); *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008) (holding plaintiff established Article III standing "by virtue of an asserted indirect

injury as [the corporation's] sole shareholder); *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992) (noting that injury to shareholders of closely held corporation does not present an Article III problem).

Courts have applied a similar rule in the context of LLCs. *See, e.g., Chase v. Hodge*, No. 1:20-cv-175, 2021 WL 1948470, at *8 (W.D. Tex. May 14, 2021) (Austin, J.), *rep. & rec. adopted*, 2021 WL 8017991 (W.D. Tex. June 23, 2021) (holding that plaintiff lacked Article III standing to challenge the alleged violation of duties owed to an LLC of which plaintiff was neither a member nor owner). Thus, to establish Article III standing based on conduct directed toward DW Klein & Co. Corporation, and LLC, Plaintiff need only allege his relationship to the entities, that the entities were harmed, and that he suffered indirect injury as a result. *In re Highland Cap. Mgmt. L.P.*, No. 22-3052, 2022 WL 5219626, at *13-14 (Bankr. N.D. Tex. Sept. 30, 2022). Here, however, he has not done so.

Neither the Operative Complaint nor its exhibits establish the nature of Plaintiff's relationship with the entities at issue. *See* Doc. 23, *passim*. Plaintiff does not allege that he was a member or owner of DW Klein & Co. LLC or a shareholder of DW Klein & Co. Corporation during the times relevant to his claims. In fact, the Operative Complaint is devoid of any reference to either of these entities apart from the vague allegation that "Plaintiff suffered injury in his business or property." Doc. 23 at 3. As Defendants point out, the entities' involvement in the action becomes apparent only upon review of Plaintiff's exhibits, which show that the three agreements underlying Plaintiff's claims were entered into by DW Klein & Co. LLC, and DW Klein & Co. Corporation, rather than by Plaintiff personally. Doc. 40 at 2-3 (citing Doc. 40-1 at 2-9 [JV Agmt.]; Doc. 23-1 at 6-7 [Loan Agmt.]; Doc. 23-1 at 20-25 [Settlement Agmt.]). Although Plaintiff signed the agreements in his capacity as "Managing Principal," nothing in

these documents or Plaintiff's other exhibits identifies him as an owner, member, or shareholder of either entity. *See* Doc. 23-1 at 7, 12-16; Doc. 40-1 at 2, 19. Absent such relationship, he cannot allege an indirect injury by virtue of his interest in these entities. *See, e.g., Highland Cap. Mgmt.*, 2022 WL 5219626, at *13 (holding that the plaintiff failed to establish constitutional standing where it did not plead its relationship to the allegedly injured company).

To be sure, any distinction between actions taken by Plaintiff in an individual rather than representative capacity is muddled by the Operative Complaint's treatment of Plaintiff and the companies as a single legal entity. For example, while the Complaint alleges that "Plaintiff entered a partial settlement," the attached agreement specifically provides that it was entered into "between DW Klein & Co. Corp." and Defendants Nordic and Velanos. *Compare* Doc. 23 at 2 *with*, Doc. 23-1 at 20. Rather than seeking to amend his pleading to resolve this confusion, Plaintiff argues only that questions about whether "documents were executed in an individual or representative capacity, and how those facts bear on ultimate entitlement to relief, are fact intensive issues that should not be resolved" on a Rule 12 motion. Doc. 41-1 at 2.

But while the Court must accept all well-pleaded facts as true, it need not accept Plaintiff's conclusory allegations that "Defendants' conduct and representations were directed at Plaintiff, that Plaintiff relied on them, and that Plaintiff suffered concrete injury." Doc. 41-1 at 2; *King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022) ("[C]ourts do not accept as true conclusory allegations unwarranted factual inferences, or legal conclusions.") (cleaned up). Even at the pleading stage, he must "clearly allege facts demonstrating" an Article III injury. *Spokeo,* 578 U.S. at 339 (cleaned up). Because Plaintiff's relationship to the injured entities is anything but clear, he has not met his burden to establish Article III standing.

Absent Article III standing, the Court lacks subject matter jurisdiction to adjudicate the merits of this action. Accordingly, dismissal under Rule 12(b)(1) is warranted.[4]

## IV. Leave to Amend

Having determined that dismissal under Rule 12(b)(1) is proper, the Court next considers whether Plaintiff should be granted leave to amend.

Defendants argue that Plaintiff's lack of standing requires dismissal of all of his claims with prejudice. Doc. 40 at 3. But Plaintiff's failure to allege facts establishing jurisdiction does not necessarily preclude amendment. Rather, it is well within a court's power "to allow or require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supporting of plaintiff's standing." *Warth v. Seldin,* 422 U.S. 490, 501–502 (1975). If, after this opportunity, the plaintiff still has not established Article III standing, the complaint must be dismissed "*without* prejudice to refiling in a forum of competent jurisdiction." *Id.; Carver*, 18 F.4th at 498.

Although Plaintiff has not yet alleged facts establishing Article III standing, it does not appear that he is unable to do so. Indeed, Defendants appear to concede that the companies at

[4] Principles of fairness generally require courts to provide both notice and an opportunity to respond before dismissing a case *sua sponte* for lack of subject-matter jurisdiction. *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021). Plaintiff, however, did not address the Court's subject matter jurisdiction in his response, instead addressing only whether the Court could exercise personal jurisdiction over the Defendants. *See* Doc. 30, *passim*. Plaintiff's conflation of the two issues is unsurprising, given that Defendants did not clearly identify the constitutional standing defect. Nevertheless, because Defendant's Rule 12(b)(1) challenge placed Plaintiff on general notice that the Court's subject matter jurisdiction was at issue, the undersigned finds that principles of fairness do not preclude dismissal. *See, e.g., Barron v. McLane*, No. 5:25-cv-94, 2026 WL 681180, at *3 n.2 (N.D. Tex. Feb. 13, 2026) (Burch, J.), *rep & rec. adopted*, 2026 WL 676381 (N.D. Tex. Mar. 10, 2026) (concluding that *sua sponte* consideration of a jurisdictional defect was proper where the plaintiff was generally on notice of the Rule 12(b)(1) challenge and the court's findings, conclusions, and recommendation provided "additional notice of the deficiencies.").

issue belong to Plaintiff, which, for the reasons outlined above, would be sufficient to allege an injury in fact here. *See* Doc. 40 at 3 (stating that Plaintiff's allegations "all relate to transactions and agreements that involve *his* LLC, *his* corporation, or both[.]") (emphasis added); *See, e.g., Highland Cap. Mgmt.,* 2022 WL 5219626, at *13 (observing that the plaintiff "arguably could have constitutional standing" as the parent of an injured corporation if it pleaded its relationship to the corporation and an indirect injury). Nevertheless, because the issue of subject matter jurisdiction cannot be waived, *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999), Plaintiff should be afforded an opportunity to amend his complaint to correct the deficiencies outlined above.

Finally, although it does not reach the issue here, the Court cautions that curing the Article III standing defect will not necessarily resolve any prudential standing or real-party-in-interest concerns. *See RLB Contracting*, 2020 WL 5880918, at *3 ("Even if a claimant has sufficiently alleged injury to establish constitutional standing, [he] . . . 'cannot rest his claim to relief on the legal rights or interests of third parties.'") (quoting *Warth*, 422 U.S. at 499). Thus, to the extent Plaintiff seeks damages for injuries suffered directly by the companies rather than himself, he must seek leave to join or substitute those entities as the real parties in interests or any amended complaint may be an exercise in futility.[5]

## V. Conclusion

For the foregoing reasons, *Defendants Daniel Fernandes Rojo Filho and Nordic Trust Alliance KB's Motion to Dismiss Plaintiff's First Amended* Complaint, Doc. 24, should be

[5] A *pro se* plaintiff is neither qualified nor permitted to represent a business entity before this Court. *See Southwest Express Co., Inc. v. Interstate Com. Comm'n*, 670 F.2d 53, 55-56 (5th Cir. 1982) (business entities must be represented by licensed counsel in a civil proceeding).

**GRANTED,** and Plaintiff's claims should be **DISMISSED WITHOUT PREJUDICE.** However, Plaintiff should be granted leave to amend his complaint to establish his relationship to the entities through which he alleges an indirect injury or, if possible, to allege a direct, personal injury. Should he do so, Defendants may re-urge their alternative bases for dismissal.

**SO RECOMMENDED** on September 9, 2026

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).